1998 ME 154

**TOWN OF EMBDEN**

v.

**MADISON WATER DISTRICT et al.**

Supreme Judicial Court of Maine.

Argued May 6, 1998.

Decided June 17, 1998.

---

Peter M. Beckerman (orally), Waterville, for plaintiff.

Neal C. Corson (orally), Madison, for defendants.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

DANA, Justice.

[¶ 1] The Town of Embden appeals from the judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) affirming a decision of the State Board of Property Tax Review that the Madison and Anson Water Districts' treatment facilities located in Embden are public property entitled to a tax exemption. We affirm the judgment.

[¶ 2] The Madison Water District and the Anson Water District jointly own two parcels of land in Embden totalling approximately eleven acres. In August 1995, the Town asked the Districts to provide a copious amount of information and documentation regarding a recently built filtration plant and other water treatment facilities located in the Town in order to assist it in making an assessment of the property. The request was purportedly made pursuant to 36 M.R.S.A. § 706 (1990),[1] but sought significantly more information than that provided for in section 706. The Districts responded by asserting that all of their property in Embden was tax-exempt pursuant to 36 M.R.S.A. § 651(1)(E) (1990),[2] and that they therefore were not required to provide a list of property according to the terms of section 706. The Town served the Districts with two supplemental tax bills for the properties, assessing the filtration plant at $2,000,000 and the other facilities at $3950. The Town's Assessors denied the Districts' subsequent request for an abatement, and the Districts appealed to the State Board of Property Tax Review.

[¶ 3] The Town filed a motion to dismiss the Districts' appeal for failure to comply with its section 706 request. The Board concluded that the Districts' response to the request was adequate and that the Districts' filtration, fluoridation, and chlorination facilities were exempt pursuant to 36 M.R.S.A. § 651(1)(E). The Superior Court upheld the Board's decision, and this appeal followed.

[¶ 4] When the Superior Court acts in its appellate capacity "we review directly the decision of the Board for abuse of discretion, error of law or findings unsupported by substantial evidence in the record." *City of Lewiston v. The Salvation Army*, 1998 ME 98, ¶ 5, 710 A.2d 914 (quotation omitted).

[¶ 5] The Town first contends that the Districts are barred from seeking an abatement because of their failure to adequately respond to the Town's section 706

1. 36 M.R.S.A. § 706 (1990) provides in pertinent part:

   Before making an assessment, the assessor ... may give seasonable notice in writing to all persons liable to taxation in the municipality ... to furnish to the assessor ... true and perfect lists of all their estates, not by law exempt from taxation, of which they were possessed on the first day of April of the same year.

2. 36 M.R.S.A. § 651 (1990) provides in pertinent part:

The following public property is exempt from taxation:

. . . .

E. The pipes, fixtures, hydrants, conduits, gatehouses, pumping stations, reservoirs and dams, used only for reservoir purposes, of public municipal corporations engaged in supplying water, power or light, if located outside of the limits of such public municipal corporation.

request. Section 706 provides that if a "taxpayer does not furnish the list [of non-exempt property], he is barred of his right to make application to the assessor ... or any appeal therefrom for any abatement of his taxes...." The facts presented here are strikingly similar to those presented in our opinion in *Champion Int'l Corp. v. Town of Bucksport*, 667 A.2d 1376, 1377 (Me.1995), in which we determined that pursuant to section 706, a request for a true and perfect list of the taxpayer's taxable property was a necessary prerequisite to a request for detailed information regarding the property. We held that in the absence of such a preliminary request, the taxpayer was not precluded from seeking an abatement. *Id.* Similarly, the Districts were never asked to provide a true and perfect list of their property prior to being served with a request for extensive and detailed information regarding their property and operations. Furthermore, the Districts responded to the Town's request by asserting a good faith belief that the subject property was tax exempt, and thus they were relieved of the necessity of filing a list before seeking an abatement. *See Howard D. Johnson Co. v. King*, 351 A.2d 524, 526–27 (Me.1976); *Depositors Trust Co. v. City of Belfast*, 295 A.2d 28, 29–30 (Me.1972).

[¶ 6] Turning to the merits of the parties' contentions regarding tax-exemption, the Board determined that section 651(1)(E) "on its face focuses on property that was a necessary component of a safe water system in 1911," the year in which the language now found in section 651(1)(E) was enacted by the Legislature. It reasoned that a modern interpretation of the statute "would bring a fluoridation, chlorination and/or filtration plant within a reasonable interpretation of [the section] in that today such plant components are necessary for the operation of a safe water system." We agree with the Board's interpretation of the law.

[¶ 7] "Statutory interpretation is a question for the court, the purpose of which is to discern the legislative intent behind the statute." *Bakala v. Town of Stonington*, 647 A.2d 85, 87 (Me.1994). "Reasoning and judgment, not the mere bald literalness of

statutory phrasing, must guide and control research for a judicial legislative design." *Inhabitants of Whiting v. Inhabitants of Lubec*, 121 Me. 121, 126, 115 A. 896, 899 (1922). When interpreting the statute at issue before us, it must also be kept in mind that taxation of public property is generally disfavored. "*[I]n the absence of legislation to the contrary*, the property of a municipal corporation used for the public benefit is free from taxation, whether it be within or without the territory of the municipality by which it is owned." *Id.* at 122–23, 115 A. at 897–98 (emphasis added).

[¶ 8] The presumptive tax-exempt status of all property owned by municipal corporations such as the Water Districts was explicitly recognized in our statutes prior to 1911. *See* R.S. ch. 9, § 6 (1903) ("[T]he property of any public municipal corporation of this state, appropriated to public uses" is exempt from taxation.). *See also City of Augusta v. Augusta Water District*, 101 Me. 148, 150, 63 A. 663, 664 (1906). In 1911 the Legislature amended R.S. ch. 9, § 6 to limit the tax exemption for property owned by public municipal corporations by adding the language now found in paragraphs D and E of section 651. P.L.1911, ch. 120. The effect of the amendment was to make public municipal corporations responsible for the property tax on land owned outside of its corporate limits, while retaining the tax-exempt status of components of the corporation's facilities used to provide valuable public services such as the delivery of water, power, and light. We conclude, as did the Board, that the language of section 651(1)(E), when viewed in the light of the statute's purpose when originally enacted, encompasses modern water treatment facilities such as filtration, chlorination, and fluoridation plants that were not contemplated in 1911 but are now necessary for the provision of safe water.[3]

The entry is:

Judgment affirmed.

---

3. Because of the failure of the Town to comply with 36 M.R.S.A. § 706 (1990) we are not pre-

sented with an argument that some unspecified portion of the District's facilities do not qualify for the exemption pursuant to 36 M.R.S.A. § 651(1)(E) (1990).